## No. 8088.

### CITY OF NEW ORLEANS VS. J. R. A. GAUTHREAUX. W. H. MERKEL, INTERVENOR.

The individual creditor who has attached partnership assets. is not a necessary party to a suit in which a liquidator is subsequently appointed.

The attachment of the partnership assets by the individual creditor is illegal and must be dissolved, and the attached property surrendered to the liquidator of the partnership.

The order of court appointing a liquidator, is an interlocutory order, which may be rendered in vacation.

A judgment rendered in vacation by consent of the parties is valid even as to third persons, in the absence of fraud and collusion.

There is no reason in law to infer that the testimony of a party to the suit would be prejudicial to his side of the controversy, from the fact that he does not offer himself as a witness

It is now well settled in principle, that a partnership may be created by construction of law, as to third persons, although neither intended nor actually existing as between the parties themselves.

APPEAL from the Civil District Court, parish of Orleans. *Tissot, J.*

---

Samuel P. Blanc, Assistant City Attorney, and F. N. Butler, for Plaintiff and Appellant.

Breaux & Hall and Ellis & Ellis for Merkel, liquidator, Appellee.

First—The effect of an attachment is to divest the possession, not the ownership, of the debtor. As to the creditor, the only effect is to give him a privilege on the property attached, with right to be paid by preference from its proceeds. 9 Rob. 375, Tyler's case.

Second—Partnership property cannot be seized for the individual debt of one of the partners. 21 An. 518 ; 27 An. 556 ; 11 R. 130 ; 3 An. 319. Nor can a partnership debt due a partnership. 10 An. 756 ; 3 An. 322 ; 27 An. 556 ; 11 R. 130.

Third—A judgment appointing a liquidator is an *interlocutory* order under Rule III, Rules Civil District Court.

Fourth—Parties to a suit are competent to agree that the judge shall take a case under advisement and sign the judgment in vacation, and such judgment is good as to third persons. 27 An. 402, 403 ; 15 An. 477.

Fifth—An appointment made by a court of competent jurisdiction, in due form, cannot be inquired into collaterally. 28 An. 806.

Sixth—Possession creates a presumption of ownership. H. D. p. 1194, No. 13 ; do. p. 488 ; Louque's Dig. p. 502, No. 3, p. 232 (c).

Seventh—Persons are often held partners, as to third persons, when either by just implication, or expressly, they are not to be deemed partners between themselves. 18 An. 631 ; Story on Part. §§ 36, 37, 48, 49, 53, 54, 64, 65 ; 3 Kent. 43, pp. 31–33 ; 4 N. S. 127 ; 9 Johns. 489 ; 4 R. 314 ; 5 La. 408 ; 30 An. 1180 ; 6 N. S. 50 ; 37 Conn. 259.

Eighth—As towards third persons a partnership may arise by mere operation of law, against the intention of the parties thereto. 2 Hy. Black, 235 ; 4 Barn. and Ald. 663 ; 16 Ves. 49 ; 17 Id. 404 ; 19 Id. 291 ; 18 Id. 300 ; 6 Madd. 145 n. ; 4 East. 144 ; 10 Johns. 226 ; 16 Id. 34 ; 1 Story, C. C. 371 ; 1 Cliff. 28.

H. N. Ogden on same side.

———

The opinion of the Court was delivered by

FENNER, J. In the principal suit herein, the city of New Orleans, proceeding as a creditor of J. R. A. Gauthreaux, individually, obtained a writ of attachment, and caused to be seized thereunder the stock of goods and other contents of a grocery store, No. 48 Canal street, the business of which was carried on by W. H. Merkel, under the business name or style of "W. H. Merkel." It also garnisheed in the hands of Merkel all the rights, credits and property of Gauthreaux in the possession or under the control of Merkel.

Shortly after this seizure, Merkel instituted a separate suit in the same court against Gauthreaux, averring that a partnership existed between the two, which transacted the grocery business at No. 48 Canal street, under the firm style of "W. H. Merkel ;" that said partnership had been dissolved ; that the city of New Orleans, as an individual creditor of Gauthreaux, had caused to be attached and taken into possession by the sheriff the goods and stock of the partnership ; and that, by reason thereof, it was for the best interests of the creditors of the partnership, entitled to be paid out of its assets by preference over the individual creditors of Gauthreaux, as well as of all concerned, that a liquidator should be appointed, and that a judicial settlement of the partnership affairs should be made. He, therefore, prayed that a liqui-

dator should be appointed, and for a full liquidation and settlement of the partnership, and, after payment of its debts, for judgment decreeing him entitled to his partnership interest of one-third in the residuum. Gauthreaux answered, admitting the partnership, and concurring in the application for a liquidator. Thereupon, on motion to that effect, suggesting various circumstances rendering the immediate appointment of a liquidator necessary, and upon the written consent of most of the creditors of the concern of "W. H. Merkel" approving the application for judicial liquidation, and recommending that Merkel himself should be appointed liquidator, the Court did so appoint him, requiring bond and security. He gave the bond, and qualified accordingly.

Thereupon Merkel, as liquidator aforesaid, intervened in this suit, claiming as liquidator the ownership and possession of the property attached, as being partnership property, not liable to seizure by an individual creditor, and demanding a dissolution of the attachment.

The city defends, (1), denying the validity of the appointment as liquidator ; (2), putting at issue the existence of the partnership ; (3), claiming the property seized to be that of Gauthreaux individually. The objections to the validity of the appointment are not tenable. They are, *first*, that the city of New Orleans, by reason of its attachment, was a necessary party to the liquidation suit. Not so. The effect of the attachment was to divest possession, not to disturb ownership, and the only result, if the attachment had been maintained, would have been to entitle the city to be paid by preference out of the proceeds of the property. The rights of the partnership, and of Gauthreaux & Merkel as partners *inter se*, could only be settled contradictorily between them. The city was not precluded, by the appointment of the liquidator, from opposing all lawful defenses to his interference with her seizure, as she has done in this very case. The liquidator has no greater right than the partnership itself would have had, and the city has nothing to complain of. She does not pretend to be a creditor of the partnership, and she certainly will not admit that her seizure has made her a partner. Only partners and partnership creditors have a direct interest in the liquidation of a partnership.

*Second.* It is objected that the judgment appointing the liquidator was a nullity because rendered in vacation. It is not a judgment, properly speaking, but a mere interlocutory order, as to which the rules of the District Court provide that the court shall be always open. Besides, it was rendered by consent, and a judgment so rendered is valid between the parties, and, in absence of proof of fraud and collusion, as to third persons also. 27 A. 402 ; 15 A. 477.

Evidently, the vital question in the case is, partnership *vel non*. If the effects attached are partnership assets, it is past controversy that

they cannot be seized at the suit of a creditor of an individual partner. If they are not partnership assets, it is equally clear that Merkel, whatever may be his personal rights, cannot claim possession in his capacity of liquidator.

It is not disputed that the grocery business carried on at No. 48 Canal street was conducted by Merkel personally, and exclusively in his name. It is equally admitted that Gauthreaux furnished capital used in the business and was interested in both the profits and the losses. From these facts alone it indisputably follows that both Merkel and Gauthreaux incurred all the liabilities of partners, and that Merkel, at least, was vested with all the powers to bind his co-partner.

The theory of the city that Merkel gave his entire time to the supervision and direction of the business, and subjected himself to all the responsibilities of a partner, without having any interest in the profits, is, to say the least, violently improbable, in the absence of proof of any agreement to remunerate him otherwise. To sustain this theory, the city relies upon the merest inferences from the slightest possible circumstantial evidence.

It offers some proof, by no means satisfactory, of the general reputation of Merkel as a man without means prior to the inauguration of the business. It was not necessary that Merkel should furnish capital ; he might well have set his time and labor in superintending the business against Gauthreaux's money. It is further shown that Merkel had no previous experience in the grocery business. It appears, however, that care was taken to engage the services of a competent and experienced grocer to aid in the conduct of the business, and it may well have been that Gauthreaux, in confiding so serious a trust of his means and credit, was more concerned in the trustworthiness of the man than in his business experience.

Proof is also offered, of conversations of Merkel and Gauthreaux, during the existence of the business, in which they denied the partnership. Neither one of them ever denied that Merkel was interested in the concern, which seems to be the vital point here. They only denied that Gauthreaux was a partner. Considering that Gauthreaux was a dormant or secret partner, whose name was not intended to be disclosed, these denials are easily accounted for, and they certainly throw no suspicion upon the interest of Merkel. This constitutes the whole affirmative proof offered by the city. On the other hand, the liquidator presents—

First—The judicial admissions of both the partners as to the partnership, and as to the interest of both in the profits and losses.

Second—The testimony of Mr. Logan, a highly respectable and unimpeached witness, who first suggested the enterprise to Merkel and

Gauthreaux, and who was present at interviews between them touching its initiation, and was interested in the matter, because, being an experienced grocer, he desired to be, and was, employed to aid in the conduct of the business. He testifies positively to the express verbal agreement between them, that they were to be partners and were to share in the profits and losses in the proportion of two-thirds to Gautheraux and one-third to Merkel.

Third—The testimony of Wilcox, the representative of Bradstreet's Commercial Agency, who called upon Merkel, in August, 1879 (a date not at all suspicious), for the purpose of getting information as to the means of the concern, and who states that Merkel then told him that he and Gauthreaux were partners and their interests were as stated in the testimony of Logan.

Fourth—The testimony of sundry witnesses, showing that the partnership, although nominally secret, was generally suspected, if not notorious.

In the absence of countervailing proof, this testimony of unimpeached witnesses, intrinsically probable and natural in itself, and concurring with all the outward and admitted facts, must be accepted as sufficient proof entirely satisfactory to our minds, that Gauthreaux and Merkel were, in the strictest sense, partners *inter se* as well as with regard to third persons, and interested as such in the profits and losses.

The inference sought to be drawn from the failure of Gauthreaux and Merkel, to testify personally in the case, that their testimony, if given, would not have sustained the partnership, has no support in principle or authority. The presumption from failure to produce the best evidence is confined in its application to documentary evidence in the possession or control of one party only, and by him suppressed or withheld. It is not extended to witnesses who may be summoned and examined by either party. It appears in the record that Merkel, though he did not take the stand, was in court throughout the progress of the trial, and open to examination by the city.

The law authorizing parties to testify does not compel them to do so, or impose any penalty on them for not doing so. When they have proved their case by other competent witnesses, the weight of such evidence is not impaired by failure to supplement it with their own.

But upon much broader general principles, we should reach the same conclusion in regard to the rights of the liquidator in this case, even if it were established, as contended by the city, that Merkel had no interest in the profits.

It is true that interest in the profits is essential to constitute partnership, and it is also true that partnership must be created by the consent of the parties. C. C. 2805–11. But these principles apply only

to the partnership as between the parties. In commenting upon the definition of partnership given by Puffendorf, not substantially different from that of our Civil Code, it was said in the recognized leading case of Waugh vs. Carver, " The definition of a partnership, cited from Puffendorf, is good, as between the parties themselves, but not with respect of the world at large." 2 Hy. Blackst. 235. It is perfectly settled, not only by the teachings of all text-writers, but also by the unanimous jurisprudence of courts, that a partnership may be created by construction of law, as to third persons, although neither intended, nor actually existing, as between the parties themselves.

See Story and Parsons on Part. *passim.*

Thus a party who participates in the profits of a business, though he had not consented to be a partner and had not even held himself out as a partner, will be bound to all persons dealing with the concern, as a secret or dormant partner. Parsons, Part. 30. So a party who has not agreed to be a partner and has no interest in the profits, will yet be held as a partner as to such persons, if he allow his name to be used as a principal in the business. Parsons, Part. 31.

In this case, such a partnership would have been created in the case, supposed, as to the creditors of the concern, of " W. H. Merkel," under which Gauthreaux would be bound as a dormant, and Merkel as a nominal partner.

As against such a partnership its creditors are entitled to all the rights and remedies which they would have had, if it had been both an actual and ostensible partnership.

They are entitled to be paid out of the stock of the concern by preference over individual creditors. So far as creditors are concerned, such a partnership is to be settled like any other.

Merkel, even if he had been a merely nominal partner, would yet, by reason of his personal liability, have had the right to provoke a settlement for the purpose of compelling the application of the stock and assets of the concern to the liquidation of its debts, in order to lessen and ascertain his ultimate responsibility. It could not be pretended that he would be bound to stand by and see the stock of the concern absorbed by individual creditors of Gauthreaux to whom he was not liable, and himself left bound for the whole of the partnership debts.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellant's cost in both courts.