No. 4113

Second Circuit

HOMER ELECTRIC SHOP v. J. D. WALDRIP & SON

(February 16, 1932. Opinion and Decree.)

Truett L. Scarborough, of Ruston, attorney for plaintiff, appellee.

H. W. Ayres, of Jonesboro, attorney for defendants, appellants.

STEPHENS, J. The Homer Electric Company brought this suit to recover from J. D. Waldrip & Son, an alleged commercial partnership, and the individual members thereof, J. D. Waldrip and L. B. Waldrip, in solido, the sum of $1,128, which represents the balance due on the purchase price of an electric light plant. The plaintiff further sued for recognition and enforcement of a vendor's lien and chattel mortgage on the light plant.

Judgment was rendered as prayed for, by default, against L. B. Waldrip. J. D. Waldrip filed an answer and denied therein that a partnership existed between him and his son L. B. Waldrip, and, in the alternative, averred that, if the court should hold that such a partnership did exist, the purchase of the light plant was foreign to the purpose for which the partnership was organized and to the business it conducted, and that said equipment did not inure to the benefit of the partnership, and that its purchase by L. B. Waldrip in its name was unauthorized and not binding on the same. It was admitted in the answer that a "semblance of a partnership" did at one time exist under the name of J. D. Waldrip & Son, but that it was dissolved long prior to the purchase of the electric lighting equipment from plaintiff.

A trial on the issues as thus made resulted in a judgment for the plaintiff against the defendant J. D. Waldrip, and he prosecutes this appeal.

The defendant-appellant, J. D. Waldrip, filed in this court an exception of no cause or right of action, a motion to remand, and, in the alternative, with reference to the motion to remand, a plea of estoppel, which said exception, motion, and plea will be hereinafter discussed.

The merits of this controversy were disposed of to our satisfaction, and in accordance with our own convictions, by the learned trial judge, who discusses the facts and the law applicable thereto in a written opinion with painstaking thoroughness. The opinion, which we adopt as our own on the questions involved, is as follows:

"Plaintiff alleges in its petition that it sold and delivered to J. D. Waldrip & Son for the price and sum of $1,503 one generator No. 1-1501, serial No. 338388, and one set of batteries, KKG 7 batteries; that plaintiff accepted from defendants as part of the purchase price of said property one old light plant valued in the trade at $375, leaving due on the purchase price thereof the sum of $1,128; that as an evidence of this indebtedness the defendant partnership, through L. B. Waldrip, one of the partners, executed its promissory note for said amount, payable to its own order and duly indorsed, due in 24 monthly installments of $47 each, and secured its payment with a chattel mortgage on the property sold by plaintiff to defendants. The note and chattel mortgage are each dated December 16, 1929, and are attached to and made a part of the petition.

"Service of the petition was made on the partnership and on each of its members. Answer was filed only by J. D. Waldrip, who denied liability on the following, among other grounds: That, in truth and

in fact, a partnership never did exist between himself and L. B. Waldrip, a fact well known to plaintiff; that he (J. D. Waldrip) individually owned the filling station and garage business conducted under the name of J. D. Waldrip & Son, another fact known to plaintiff, and that L. B. Waldrip, who signed the note and chattel mortgage, was without authority to bind him in the transaction. In the alternative, defendant pleads that the buying of the equipment and the signing and indorsing of notes are beyond and foreign to the purpose and scope of the business of the partnership, and that, in any event, the sale of defendant's old light plant by L. B. Waldrip to plaintiff, without defendant's knowledge or consent, was illegal, null, and void, and, being so, that the whole transaction is illegal, null, and void, and defendant is entitled to the return of his old light plant or to judgment for the value thereof. He prays that plaintiff's demands be rejected, with costs, and for judgment in reconvention against plaintiff for the value of the old light plant, etc.

"The evidence shows that J. D. Waldrip entered into the filling station and garage business at Quitman about the year 1926, and from that time until about July 1, 1930, conducted said business under the name of J. D. Waldrip & Son. He bought and sold gasoline, oil, cigarettes, auto parts, and other things. He charged batteries and repaired cars, and regularly employed about three people in this business. On top of the station·house or garage he had placed a large sign board with the words 'J. D. Waldrip and Son Gas—Oil—Garage' printed thereon in very large letters. On the roadside both north and south of Quitman he. had boards or signs erected conveying about the same information. At least one suit was filed against a debtor of the business under the name of J. D. Waldrip & Son. Statements were mailed to customers under that name. Plaintiff received one such statement for the price of a tire and issued its check, dated October 17, 1929, in payment thereof, payable to J. D. Waldrip & Son. This check bears the indorsement of defendant.

"The evidence further shows that, prior to the date upon which the note and chattel mortgage were executed, plaintiff's salesman, C. B. Lay, stopped at this station on a number of occasions, and on each occasion found L. B. Waldrip there and, apparently, at least, in active charge of the business conducted there. On November 15, 1929, said salesman and L. B. Waldrip reached an agreement under which plaintiff was to deliver and sell to defendant partnership the light plant equipment in question, and under which plaintiff agreed to buy defendant's old light plant and allow the sum of $375 on the sale price of the new equipment.

"The new equipment arrived during the early part of December, 1929, and immediately plaintiff had its workmen to unload and set up the new equipment and take out and ship away the old light plant then in use. On December 16, 1929, the partnership, through L. B. Waldrip, executed the note and chattel mortgage, as agreed upon theretofore, and made the basis of this suit. The new equipment was put into use as soon as it was installed.

"Later, on January 24, 1930, L. B. Waldrip issued his own check for $47, payable to General Motors Acceptance Corporation, the holder of the note, evidently for the purpose of paying the first installment on the note. On March 5, 1930, he issued another check to the same payee for $47 in the name of J. D. Waldrip by himself, for the purpose of paying another installment. However, both checks were turned down by the bank upon which they were drawn.

"It is further shown by the evidence that defendant J. D. Waldrip for a number of years has been employed by Davis Bros. Lumber Company as timber buyer, and that he devotes all of his time to that work. He devoted none of his time to the filling station and garage business conducted under the name of J. D. Waldrip & Son and visited it no oftener than every two weeks. Mr. Waldrip testified that he employed Billy Bond as manager of the business during the entire year of 1929. He also. testified that his son L. B. Waldrip, worked at the station some, but that he had no authority to make purchases for the business. He did not state who, if anybody, did have that authority. Billy Bond testified that he was employed as manager

and did some of the buying, but that some of the buying was done by others. He severed his connection with the business in the early part of December, 1929, and had nothing more to do with it. It is not shown who succeeded Mr. Bond as manager, or who managed the business from December 1, 1929, until July, 1930, when defendant leased the business to W. H. Worsham.

"Defendant contends that no partnership existed between himself and L. B. Waldrip. That may be true. But the evidence abundantly supports the conclusion that in their business relations with the public they held themselves out as partners. They so held themselves out to this plaintiff, and that fact alone is sufficient in law to estop them from denying the partnership relation and to render them liable for the debt sued on.

"The jurisprudence of this state is well settled that one who acts in such a manner as to induce others to believe that he is a member of a certain partnership, makes himself liable to them as a partner. Dodd Brown & Co. v. Bishop, 30 La. Ann. 1178; N. O. v. Gauthreaux, 32 La. Ann. 1126; United Chemical Co. v. Gulf, etc., 4 La. App. 623; Frankelite Co. v. Wintiler Electric Co., 9 La. App. 323, 120 So. 505; Chadick-Hayes Prod. Co. v. Pine Grove Grocery Co., 10 La. App. 471, 121 So. 348.

"Defendant further contends that one cannot plead estoppel in such cases who has not himself acted in the good faith belief that a partnership actually existed; that, in the case at bar, plaintiff knew that a partnership did not exist between J. D. Waldrip and L. B. Waldrip; that L. B. Waldrip so informed plaintiff's salesman before and at the time the transaction in question was entered into. It is argued that L. B. Waldrip told C. B. Lay, plaintiff's salesman, that J. D. Waldrip was the sole owner of the business, and that the old light plant was the individual property of defendant. The testimony of Irman McConathy is pointed to as corroborating that fact.

"The evidence is far from being convincing that L. B. Waldrip conveyed such knowledge to plaintiff's salesman.

"The evidence is conclusive that L. B. Waldrip was the active manager of this business from the time Billy Bond left it in the early part of December, 1929, until it was leased to W. H. Worsham in July, 1930. If another had been the manager, defendant no doubt would have so stated. He should have known. While Mr. Bond testified that he was manager until December 1, 1929, I am convinced that L. B. Waldrip was also active in the management. Otherwise, Mr. Bond, as manager, would have discovered that L. B. Waldrip was about to purchase the new light plant and equipment and certainly would have conveyed information of that fact to his employer. The failure of J. D. Waldrip to say who the manager was after December 1, 1929, until the business was leased in July, 1930, coupled with the positive and uncontradicted testimony of more than one witness that L. B. Waldrip was there, apparently in charge of the business, points to the irresistible conclusion that L. B. Waldrip was the manager during that period.

"During that period of time the new light plant arrived at the depot and was taken out and set in operation, the old light plant was taken out and moved away, the note and chattel mortgage were executed, and the checks of January 24, 1930, and March 5, 1930, were issued to cover installments on the note. In the face of these facts, L. B. Waldrip says he told Salesman Lay that he had no authority to make the trade, and that he would have to see J. D. Waldrip, his father, the owner of the business. Irman McConathy did not hear much that was said, but he is sure that he heard L. B. Waldrip tell Lay he would have to see defendant about the trade.

"C. B. Lay positively denies that L. B. Waldrip told him anything of the kind. On the other hand, Lay says that L. B. Waldrip told him that defendant authorized him to sell the old light plant provided he could get $350 for it.

"L. B. Waldrip would have one believe that he opposed entering into this transaction from its very inception. If it were not for his actions such might be a reasonable conclusion. However, his actions outweigh his words. His actions clearly indicate that he willingly and voluntarily entered into the deal with due deliberation,

accepted and used the new equipment with profit to the business, and, in good faith, undertook to pay for it. L. B. Waldrip's action in the matter is in entire accord with C. B. Lay's testimony. In other words, the things that L. B. Waldrip did, corroborate the testimony of C. B. Lay, resulting in the conclusion that L. B. Waldrip was in error about conveying to C. B. Lay the knowledge that defendant owned the business and that he was without authority to purchase the new light plant equipment.

"I think the prolonged absence from and the continued inattention of defendant to the business, taken in connection with the presence of L. B. Waldrip, his son, in the business, performing duties that only a manager would undertake to do, were sufficient to and did lead plaintiff to believe there did exist a partnership between these parties, and that L. B. Waldrip was the manager, and that, as a result, plaintiff did enter into the transaction in good faith.

"It is further contended that defendant had the plant shut down as soon as he discovered it in operation and then notified plaintiff to come and get it. If the contract had been legally entered into, then these acts on the part of defendant would not in any way affect the legality of it. Then it is not shown when these things were done. Defendant should have known. Granting, arguendo, that these acts might affect the validity of the contract, if done in a reasonable time, it is not shown when he had the plant shut down. Evidently it was after March 5, 1930, for, undoubtedly, L. B. Waldrip would not have undertaken to make a payment on the note after his father had told him he was not going to pay for the plant. If so, then the plant had been in the garage and in operation for at least two and a half months. His permitting the plant to remain in his garage and to be used for that length of time can be construed in no other light than as a ratification of the sale and contract. If he did not know it was there, it was certainly his duty to know it, under his defense in this case. His alleged repudiation was not made within a reasonable time. Dayton Scale Co. v. Capps, 9 La. App. 649, 120 So. 94; Redmond & Son v.

Wood, 6 La. App. 389; Triangle Machine Co. v. Dutton, 13 La. App. 14, 127 So. 54.

"The final and last defense is that the transaction was beyond the authority of L. B. Waldrip and not within the scope of the business of the partnership. Charging batteries was one business carried on there. It was necessary to have power for that purpose and to have light. If the old light plant was not giving proper service, and evidently in the opinion of L. B. Waldrip it was not, it would certainly be in furtherance of the business of the concern to discard the old plant and get a new one—one that would adequately serve the purpose for which it was used. And it would be good business to trade in the old plant and receive its full value, rather than keep it and not use it. To make such a trade would be, in my opinion, both within the authority of the manager and within the scope of and in furtherance of the business of the partnership. The fact that the old plant was the individual property of defendant and was traded off without his actual knowledge and consent makes no difference.

"It is admitted that there was no partnership in existence at the time this suit was filed. Upon the dissolution of a commercial partnership, the partners are liable in solido for the debts of the partnership. Judgment has already been rendered against L. B. Waldrip by default and signed.

"For the reasons herein assigned, plaintiff is entitled to judgment in its favor against J. D. Waldrip for the full amount and as prayed for in the petition. And it is so ordered."

The exception of no cause or right of action which was presented to this court by J. D. Waldrip, defendant-appellant, is based on the proposition that a suit against a commercial partnership and the individual members thereof, founded on a partnership obligation, does not disclose a cause or right of action against the latter. The exception is overruled as it is without merit. A commercial partnership and the individual members composing it are solidary debtors and may be sued in the same

action. Civ. Code, art. 2872; Key v. Box, 14 La. Ann. 497; E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 84 So. 898; American Photo Player Co. v. Simon, 151 La. 708, 92 So. 307; Kelley Springfield Tire Co. v. Oakley et al., 18 La. App. 495, 138 So. 673; First National Bank v. Knighton Bros., 16 La. App. 407, 134 So. 706.

The motion to remand, and, in the alternative, the plea of estoppel, filed by the defendant J. D. Waldrip, are set forth as follows:

"1st. That judgment was rendered upon default against L. B. Waldrip on the 16th day of January, 1931, and against appearer on the 12th day of February, A. D. 1931, each judgment being for the amount sued for, and that although the Homer Electric Shop, plaintiff, appellee, had alleged and insisted that the machine, the purchase price of which was in controversy, was sold to an alleged partnership of J. D. Waldrip and L. B. Waldrip, known as J. D. Waldrip & Son, and although said plaintiff, appellee, had contended and insisted that said property was not sold to L. B. Waldrip, co-defendant, it did on the 14th day of February, 1931, cause a writ of fieri facias to issue on the judgment rendered against L. B. Waldrip and during the pendency of this appeal and did cause the Sheriff of the Parish of Jackson, State of Louisiana, to seize the machine, the purchase price of which is sought by this suit and which is contended to belong to J. D. Waldrip and/or the partnership of J. D. Waldrip & Son, as the property of L. B. Waldrip and that following said seizure said property, on the 20th day of March, 1931, was sold under said writ of fieri facias.

"2nd. Appearer shows that said seizure and sale of said property was tantamount to an admission that his contention that the property was sold to the aforesaid L. B. Waldrip was true and correct and that accordingly, to the end that justice and equity might be done to all parties, this record should be remanded in order that the aforesaid facts may be proven.

"3d. In the alternative, should the court not remand this suit, then and in that event appearer shows that the aforesaid seizure and sale of the property in controversy was an admission that his contentions are not correct and that accordingly the Homer Electric Shop, plaintiff, appellee, is estopped from contending otherwise."

Conceding the facts as thus alleged to be true, we cannot conclude therefrom, as does the mover, that the seizure and sale of the light plant was tantamount to an admission that the property was sold to L. B. Waldrip instead of the partnership.

The plaintiff obtained a final judgment against L. B. Waldrip for the full amount sued for, with recognition of its vendor's lien and chattel mortgage against the property in question. Therefore, in seizing the property and enforcing the judgment against it, the plaintiff did not change its position, but was merely asserting the rights which it had prayed for in its petition and which were judicially recognized. It is true that the mover herein owned an undivided one-half interest in the property by virtue of the admitted dissolution of the partnership, but he acquired that interest subject to plaintiff's chattel mortgage.

If this defendant objected to that portion of the judgment against his son L. B. Waldrip which recognized plaintiff's chattel mortgage against the property, his interest was sufficient therein upon which to base an appeal; or, if he objected to the seizure of his undivided interest in the property, his remedy was by third opposition, in the court of original jurisdiction.

This view of the subject-matter disposes of both the motion to remand and the plea of estoppel. They are overruled, and the judgment appealed from is affirmed.