371 So.2d 1367 (1979)
EDCO PROPERTIES, a partnership, Plaintiff-Appellee,
v.
Fred J. LANDRY, Defendant-Appellant.
No. 6986.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1979.
Rehearing Denied July 11, 1979.
*1368 Poteet & Landry, John G. Poteet, Jr., Lafayette, for defendant-appellant.
Bean & Rush, Ernest L. Parker, Lafayette, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
GUIDRY, Judge.
In this suit plaintiff, Edco Properties (Edco) seeks specific performance of an option to purchase immovable property. On October 29, 1975, the defendant, Fred J. Landry, entered into a lease-option agreement with a partnership known as Edco Properties, the object of which was a 97 acre tract of land located in Lafayette Parish. By the terms of this agreement, the lessee (Edco) was given, during the term of the lease, the option to purchase the leased property for the sum of $776,000.00 after giving to the lessor (Landry) timely notice of its intention to do so. The agreement expressly precluded the lessee from either assigning or sub-letting its rights in the contract without the written consent of the lessor. On November 30, 1977 Mr. Landry notified the lessee that he considered the lease-option agreement to have been dissolved as a result of the lessee's alleged violation of the non-assignment clause. On December 28, 1977 Edco nevertheless notified Landry that it intended to exercise its right to purchase the leased property. When Mr. Landry refused to sell Edco the property, Edco instituted suit for specific performance to compel Landry to convey title to the lease property to plaintiff pursuant to the terms of the lease-option agreement. Defendant filed various exceptions as well as a motion for summary judgment, contending, in effect, that the sale by some of the original partners of their interest in Edco Properties, during the term of the lease, effected a dissolution of the partnership and constituted a transfer or assignment of the lease in violation of the non-assignment clause. The trial court overruled defendant's exceptions and denied his motion for summary judgment concluding that the sale of partnership interests by some of the original partners in Edco did not operate to either dissolve the partnership or effect an assignment and/or transfer of the lease. The trial court subsequently granted plaintiff's motion for summary judgment, and ordered defendant to convey to Edco the 97 acre tract of land under the terms set forth in the lease-option agreement. Defendant has instituted this appeal.
On appeal defendant contends that the trial court erred in so holding and additionally argues for the first time that, in any *1369 event, the monthly lease rentals represent earnest money payments which entitles him to recede from the agreement upon compliance with the provisions of R.C.C. Article 2463. The substantial issues on appeal are:
(1) Did the monthly lease rentals represent earnest money payments?
(2) Did the transfer of interests in Edco by some of the individual partners effect a transfer or assignment of the lease in violation of the non-assignment clause?
(3) Did the transfer of interests in Edco by some of the individual partners operate to dissolve the partnership and serve to vest title to the lease-option agreement in the successor partnership in violation of the non-assignment clause?
I. DID THE MONTHLY LEASE PAYMENTS REPRESENT EARNEST MONEY?
LSA-C.C. Articles 2462 and 2463 provide:
Art. 2462. "A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell; after the purchase of such option, for any consideration therein stipulated, such offer, or promise, can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
Art. 2463. "But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to-wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."
Appellant contends that the monthly lease payments made by Edco (which under the agreement were to be applied to the sale price) were intended by the parties to represent earnest money. If determined to be such, the lessee would be precluded from seeking specific performance under LSA-C.C. Article 2463. The basis for appellant's contention is the apparently well settled rule that all deposits made pursuant to a contract to sell are presumed to be earnest money in the absence of an express intention to the contrary. Collins v. Demarest, 45 La.Ann. 108, 12 So. 121 (La.1892); Terrebonne v. Cheramie, 151 La. 929, 92 So. 388 (La.1922); Haeuser v. Schiro, 235 La. 909, 106 So.2d 306 (La. 1958), and authorities cited therein. It is undisputed that there is no stipulation in the lease-option agreement stating that the lease payments were not earnest money. However, we do not find the above stated presumption applicable under the circumstances of this case.
The case of Moresi v. Burleigh, 170 La. 270, 127 So. 624 (La.1930) involved a suit for specific performance of an option to buy stock. The option agreement in dispute therein expressly provided that the price paid for the option was not earnest money. However, the court made the following observations concerning earnest money and option contracts:
"`In an option contract, the optionee acquires no rights in the land or the subject-matter optioned. There is no transfer of title. It is simply a contract by which the owner grants the optionee the right to purchase the thing at a fixed price and within a fixed time. Davis v. Roseberry, 95 Kan. 411, 148 P. 629, 3 A.L.R. 564; Ide v. Leiser, 10 Mont. 5, 24 P. 695, 24 Am.St.Rep. 17.
"`The option is a contract preliminary to an agreement to purchase. When exercised it ceases to exist, a new contract arising, which is enforceable against either party. There is no provision for the giving of earnest money with an option. The right acquired by an optionee is an unqualified right to purchase if he so elect. He can release himself without a forfeit by simply failing to exercise the *1370 right acquired.'" (Emphasis ours) 170 La. 270, 127 So. at pg. 627
It is likewise pointed out by Justice Tate in his dissent in Haeuser, supra, that in light of the comparative legislative histories of Articles 2462 and 2463, the latter article should only be applied to the "promise to sell" referred to in subsection one of Article 2462 and not to the "option" contract provided for in subsection two of that article.[1] At the time Article 2463 was drafted, option contracts were not recognized in our law. When paragraph two was added to Article 2462 recognizing the option contract in Louisiana,[2] the continuity of thought which had originally existed between these two articles was broken. A peculiar problem therefore arises when we attempt to reconcile this traditionally civilian notion of the giving of earnest with the common law notion of an option contract.[3] However, it is clearly inconsistent with the nature of an option agreement to presume thatin the absence of an express stipulation to the contrarythe parties to the contract intend for the price paid for the option to represent a relinquishment of the option holder's right to specific performance, and a reservation of the option grantor's right to recede from the contract. A party who secures an option to buy is merely securing the right to compel the grantor to sell at his (the option holder's) discretion. If the consideration paid for such an option was to be presumed to give the grantor the right to refuse to sell, the option would serve no legal function. See, 2 Litvinoff, Obligations, § 123, 7 Louisiana Civil Law Treatise, 1975; Litvinoff, "Of The Promise of Sale and Contract to Sell", 34 La.L.R. 1017 at 1073 (1974); Smith, "An Analytical Discussion of the Promise of Sale and Related Subjects, Including Earnest Money", 20 La. L.Rev. 522 at 537 (1960); Comment, "The Effect of Article 2462 of the Louisiana Civil Code", 3 La.L.Rev. 629 (1941); See also, Smith Enterprises, Inc. v. Borne, 245 So.2d 9 (La.App. 1st Cir. 1971) writ ref. 258 La. 574, 247 So.2d 393.
The agreement in the instant case is clearly a lease coupled with an option to buy. We conclude and thus hold that LSA-C.C. Article 2463 does not apply to an option contract in the absence of an express agreement that the consideration therefor is intended to represent earnest money. In the absence of such a stipulation in the agreement in question we find that the payments made by the lessee were not intended as such, and that Edco has the right to seek specific performance of the option to buy.
II. DID THE TRANSFER OF INTERESTS IN EDCO BY SOME OF THE INDIVIDUAL PARTNERS EFFECT A TRANSFER OR ASSIGNMENT OF THE LEASE IN VIOLATION OF THE NON-ASSIGNMENT CLAUSE?
III. DID THE TRANSFER OF INTERESTS IN EDCO BY SOME OF THE INDIVIDUAL PARTNERS OPERATE TO DISSOLVE THE PARTNERSHIP AND SERVE TO VEST TITLE TO THE LEASE-OPTION AGREEMENT IN THE SUCCESSOR PARTNERSHIP IN VIOLATION OF THE NON-ASSIGNMENT CLAUSE?
On the date which the lease-option agreement was entered into by the parties, Edco was a partnership consisting of James D. Edwards, Robert E. Gaither and Richard D. Mitchell. The agreement to form this partnership was dated June 3, 1975 and recorded June 30, 1975 as entry no. 646140 of the records of the Lafayette Parish Clerk of Court's office. On December 22, 1976, after the lease-option agreement was entered into, Edwards and Mitchell (owners of a 90% interest in Edco) conveyed their interests *1371 in the partnership to Gaither and James R. Leonard. Gaither received 90% of their interests and Leonard received 10%. On January 21, 1977, Gaither and Leonard conveyed 75% of their combined interests to Thomas R. Becnel, Britt Busch, Donald J. O'Rourke, John Price and George Schneider. Gaither retained 25% interest in Edco. Appellant contends that when Edwards and Mitchell initially transferred their interests in Edco to Leonard and Gaither, such action effected a dissolution of the partnership and constituted an assignment of their interests in the lease-option agreement. By the terms of the lease-option agreement, the lessee was not entitled to assign or transfer its interest in the contract. Consequently, appellant contends, the contract was dissolved. Appellee, on the other hand, alleges that although the agreement precluded the assignment or sub-letting of an interest in the contract, it did not preclude the individual partners in the partnership from conveying their interests in the partnership itself. Appellee further contends that the transfer of the individual partners' interests in the partnership did not result in a dissolution of the partnership nor did such action amount to a transfer of any interest in the contract to a third party.
(a) DID THE TRANSFER OF PARTNERSHIP INTERESTS CONSTITUTE A TRANSFER OF AN INTEREST IN THE LEASE-OPTION AGREEMENT?
The Louisiana partnership has long been considered a juridical person for certain purposes. It is possessed of rights and privileges and it is subject to obligations distinct from those of the individuals composing it. The partnership itself may own property, and it stands as the creditor or debtor of its own rights and obligations. Blanchard v. Cole, 8 La. 153 (1835); Dick v. Byrne, 7 Rob. 465 (1844); Succession of Pilcher, 39 La.Ann. 362, 1 So. 929 (1887); O'Neal, "An Appraisal of the Louisiana Law of Partnership: A Comparative Focus on Source Materials and Underlying Practices", Part II, 9 La.L.Rev. 450. A partnership may institute suit in its own name to assert its interests in its property, such being a corollary of the well settled rule that both movable and immovable partnership property is owned by the firm itself and not by the individual partners. Succession of Pilcher, supra; Toelke v. Toelke, 153 La. 697, 96 So. 536 (1923); Posner v. Little Pine Lumber Co., 157 La. 73, 102 So. 16 (La. 1924); Wolf v. New Orleans Tailor-Made Pants Co., 52 La.Ann. 1357, 27 So. 893 (1900); E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 84 So. 898 (1920); Snyder v. Davidson, 172 La. 274, 134 So. 89 (1931). The right of the individual partners to property standing in the name of the partnership is no more than a right to an undivided interest in whatever property remains after the partnership is dissolved, its rights and obligations are satisfied, and its unliquidated assets liquidated. In Posner, supra, the court stated:

"On the legal proposition that the debts must be paid before the partners can divide the property, that the assets belong to no partner separately, but are a common stock pledged for the debts of the partnership, see Ward v. Brandt, 11 Mart. (O.S.) 331, 13 Am.Dec. 352; United States v. Baulos, 5 Mart. (N.S.) 567; Purdy v. Hood, 5 Mart. (N.S.) 626; Claiborne v. Their Creditors, 18 La. 501; Mourain v. Delamarre, 2 La.Ann. 142.

We quote the following from the Succession of Pilcher, 39 La.Ann. 362, 1 So. 929.

`A partnership once formed and put into action becomes, in contemplation of law, a moral being, distinct from the persons who compose it. * * * The partners are not the owners of partnership property. It belongs to the ideal being which has the control and administration thereof to enable it to fulfill its legal duties and obligations. The partners own the residuum.'

See, also, Perry v. Holloway, 6 La.Ann. 265; and Liquidating Com'rs of Bank of Monroe v. Dodson, 131 La. 990, 60 So. 659, wherein this court said:

`The transfer by a partner of his half interest in assets belonging to a partnership is a transfer of his interest therein, as may appear on a settlement with his *1372 copartners.'" 157 La. 73, 102 So. at pg. 18

It is well settled that a partner has no interest in the individual assets of the partnership. A partner may not grant a mortgage on any of the partnership assets, Harrington v. Harrington, 151 So. 648 (La.App. 2nd Cir. 1934); O'Neal, supra, nor can the creditor of an individual partner seize a particular partnership asset in satisfaction of his claim, Levy & Sugar v. Cowan and Mayo, 27 La.Ann. 556 (1875); City of New Orleans v. Gauthreaux, 32 La.Ann. 1126 (1880); Toelke, supra; and, the sale by one partner of his interest in an unliquidated partnership is neither a sale of specific property nor of any interest in specific property. Posner, supra.
Applying the above rules to the facts established in the record, it is clear that when appellant entered into the lease-option agreement with Edco, he entered into a contractual relationship with the partnership entity itself. The contract therefore became a partnership asset. When Edwards and Mitchell transferred their interests in Edco to Gaither and Leonard, they were transferring only an undivided interest in an unliquidated partnership, the value of which would be determined after all partnership affairs were settled and unliquidated assets liquidated. Posner, supra. As they had no specific interest in the lease-option agreement itself, (it being an asset of the partnership entity) they could not transfer or assign any interest therein. We find, therefore, that the various transfers of partnership interests by the individual partners of Edco did not effect a transfer of any interest in the lease-option agreement.
(b) DID THE TRANSFER OF PARTNERSHIP INTERESTS EFFECT A DISSOLUTION OF THE PARTNERSHIP AND VEST TITLE TO THE LEASE-OPTION AGREEMENT IN THE SUCCESSOR PARTNERSHIP IN VIOLATION OF THE NON-ASSIGNMENT CLAUSE?
Appellant contends that the transfer of interests in Edco by some of the individual partners operated to dissolve the partnership and served to vest title to the lease-option agreement in the successor partnership in violation of the non-assignment clause. On the other hand appellee contends that the transfer by a partner of his interest in a partnership does not result in a dissolution of the partnership. It is argued that such a conclusion is supported by Louisiana's partnership "entity theory", insofar as a change in personnel should not alter the construction of the entity. The trial court so held, relying on Posner v. Little Pine Lumber Co., supra; Shalett v. Brownell-Kidd Company, 153 So.2d 425 (La.App. 1st Cir. 1963), writ denied, 244 La. 1004, 156 So.2d 57 (1963); and, Goldman v. General Supply Co., 6 So.2d 778 (Orleans, 1942).
In Posner, a withdrawing partner accepted a note as partial payment for his interest in the partnership. The remaining partners, who purchased the withdrawing partner's interest, expressly assumed all partnership liabilities existing at the time of his withdrawal, including a mortgage indebtedness. When the former partner's endorsee sued for recognition of a vendor's lien on the partnership's property, the mortgagee filed a third party opposition, seeking to have his mortgage prime the note. The Court rendered judgment for the mortgagee, finding that the sale of a partner's interest could not create a lien on specific items of partnership propertya finding clearly in line with the above cited jurisprudence. However, the court, in dicta, made the following comment which is relied upon by appellee in support of its position:

"The Court of Appeal, in the two opinions which it delivered in this case, one on the original hearing and the other on rehearing, admits the correctness of the legal principle that the sale by one of the partners of his interest in an unliquidated partnership is not a sale of specific property or of any interest in specific property, and that, therefore, no vendor's lien can be created by such a transaction. It holds, however, that the act of sale from *1373 Colbert to Baker and Stell evidenced a dissolution of the partnership and a liquidation of its affairs, and that the sale by Colbert of his undivided one-third interest in the partnership property was not the sale of an unliquidated interest in an unliquidated partnership.

If the position assumed by the Court of Appeal be legally correct, then every time one partner disposed of his interest in a partnership to his copartners it would constitute a sale of an interest in specific property, and operate as a dissolution and liquidation of the partnership. Such is not the law." (Emphasis added) 157 La. 73, 102 So. at pg. 17.

This language, was not determinative of the issue presented in Posner and is therefore dicta and cannot be construed as authority for the proposition that the sale of a partner's interest will not result in a dissolution of the partnership. However, in any event, the dissolution of a partnership is clearly separable from the liquidation of its assets, which may take place long after the partnership has been dissolved.
In Shallet and Goldman, supra, the intermediate appellate courts did construe the above quoted language in Posner to mean that the sale of a partner's interest would not operate to dissolve the partnership. The Supreme Court denied writs in Shallet with the statement that "[o]n the facts found by the Court of Appeal, the result is correct". We do not construe this writ denial in Posner as a clear holding from our Supreme Court that the sale of a partner's interest will not result in a dissolution of the partnership.
We observe that in the Louisiana State Law Institute's proposed revision of the Civil Code Articles on Partnership they propose a new Article 22, which provides that:
"A partnership does not terminate as a result of a change in the number or identity of the partners."
The comments by the Louisiana State Law Institute do state, however, that this proposed article presents a new concept.
Our research in connection with this interesting question has disclosed early and contrary jurisprudence to the effect that if a partner chooses to sell his interest and to either add a new partner or to simply withdraw the partnership is thereby dissolved and a new partnership is created with the new and/or remaining partners. Abat & Generes v. Penny, 19 La.Ann. 289 (1867); Violett v. Fairchild, 6 La.Ann. 193 (1851); Resor v. Capelle, 140 So. 699 (Orl., 1932); 68 C.J.S. Partnership § 347; § 31, Uniform Partnership Act (which substantially conforms with the provisions of LSA-C.C. Article 2876); Planiol Traite Elementaire De Droit Civil, Vol. 2, Pt. 2, No. 1975. See also Terzia v. The Grand Leader, 176 La. 151, 145 So. 363 (La.1932). Support for the conclusion reached in the cited jurisprudence is found in the well settled rule that when a partner transfers his interest in a partnership, the new partner will not be liable for any partnership liabilities incurred prior to the date of transfer. It is only for the debts of the "new" partnership which the entering partner will be held liable for in the absence of an express assumption of the "old" firm's liabilities made in writing. Paradise & Bro. v. Gerson, 32 La.Ann. 532 (1880); Resor v. Capelle, supra; Taylor v. Victoria Nav. Co., 176 So. 519 (Orleans, 1937).
Although, as set forth above, there appears to be a serious conflict in the jurisprudence on the issue as to whether a change in the number or identity of the partners terminates the partnership, we decline to make a categorical determination of that issue as to do so would constitute mere dicta. This is so because even were we to hold that Edco was dissolved by the sale of partnership interests such circumstance would not and could not result in a dissolution of the lease-option agreement or a transfer and assignment of that agreement to the new partnership. Rather, in such event, the lease-option agreement would remain as an asset of the dissolved partnership with right of enforcement in the latter entity. A dissolved partnership maintains a fictional existence with respect to its past transactions and existing assets, until all of its affairs are wound up and completed. *1374 This fictional existence permits the partnership to liquidate its affairs, perform existing contracts, collect its debts, pay its obligations and distribute its assets according to the partnership agreement. Cambre v. St. Paul Fire and Marine Insurance Co., 331 So.2d 585 (La.App. 1st Cir. 1976), writs refused, 334 So.2d 434 and 334 So.2d 435; Harrison v. Frye, 46 So.2d 382 (1st Cir. 1950); Duvic v. Home Finance Service, 23 So.2d 790 (Orleans, 1945); Johnson v. Iowa Rice Dryer, Inc., 226 So.2d 194 (La.App. 3d Cir. 1969); 68 C.J.S. Partnership § 351; Comment, "Landlord and Tenant: Summary Ejectment in Louisiana", 21 Tul.L.Rev. 256 (1946); Snellings, "Certain Aspects of Heritable Obligations", 30 Tul.L.Rev. 305 (1956).
In conclusion, we find that when Edwards and Mitchell disposed of their interests in Edco, they did not transfer and/or assign any interest in the lease-option agreement contrary to the non-assignment clause in such agreement. Nor did such circumstance effect a dissolution of the lease-option agreement or constitute a transfer and assignment thereof to a new partnership even if as a result of such sale by Edwards and Mitchell Edco was dissolved and a new partnership was formed.
The record reveals that on December 28, 1977 Edcothrough its original partners Gaither, Mitchell and Edwards notified Landry of its intention to purchase the 97 acre tract of land pursuant to the terms of its option. When appellant refused to execute the act of sale, he did so in violation of his contract with Edco. Edco, either as an on going partnership or a partnership in liquidation, had the capacity to sue in its partnership name to assert its contractual rights under this agreement, appearing through one of the partners (Gaither). Montague v. Weil and Bro., 30 La.Ann. 50 (1878); Guess and Albin v. Ham, 183 So. 61 (La.App. 2nd Cir. 1938); writs denied August 5, 1938; Cambre v. St. Paul Fire and Marine Insurance Co., supra. Considering the above we find that the trial court properly granted Edco Properties specific performance of the purchase option.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are to be paid by appellant.
AFFIRMED.
NOTES
[1] By reference, Justice McCaleb incorporated Justice Tate's reasons into his own dissenting opinion in this case.
[2] By Act 249 of 1910.
[3] For an historical examination of the correlation between the option contract and the giving of earnest, see Note, 33 Tul.Law Review 418 (1959).