O’NIBLL, C. J.
 

 The question in this case is whether the rent due by the lessee to the lessor of a' railroad right of way for a spur track has a lien on the rails, angle bars, etc., composing the spur track and belonging to a railroad company that leased the equipment to the lessee of the right of way.
 

 The case was submitted on a statement of facts, admitted by all parties. In, May, 1922, the Goldman family, consisting of Mrs. Bettie S. Goldman, H. T. Goldman, G. C.. Goldman, and J. B. Goldman, being the joint owners of a large plantation, leased to the-Goldman Landing Company, for the term of 13 years, at $700 per year, payable quarterly in advance, a right of way 50 feet wide, on which to construct a spur track extending eastward from the main line of the Missouri Pacific Railroad to the eastern boundary of " the plantation, thence to continue, over a right of way leased by the landing company from another landowner, to the Mississippi river. The Goldman Landing Company leased from the Missouri Pacific Railroad Com-pany, for a stipulated rental, the steel rails, angle bars, etc., and constructed — or had the-railroad company to construct — the spur track from its main line of railroad to the-river bank; and the Goldman Landing Company, being engaged in the business of dredging and shipping gravel, used the spur-track as a plant facility for nearly, three-years. The lessee paid promptly the quarterly installments of rent for the right of' way up to and including the installment due on the 1st of October, 1924, but thereafter discontinued operations and failed to-pay the rent. On the 10th of June, 1925, the ■ Goldmans assigned to the Burn Planting Company their right,. title, and interest in the contract of lease, and one week later the-Burn Planting Company brought this suit against the Goldman Landing Company for ■ the balance of $7,000 of rent due and to-become due under the contract. The prayer-of the petition was for a judgment that would be exigible at once for the rent then due, and be exigible for each subsequent installment of rent on the date of payment stip- • ulated in the contract. The plaintiff prayed' for recognition and enforcement of the lessor’s lien and privilege on all of the property on the leased right of way, and prayed .for and obtained a writ of pro.visional seizure,
 
 *723
 
 under which the sheriff seized the spur track, consisting-of the rails, angle bars, etc., belonging to the Missouri Pacific Railroad Company, on the leased right of way. The railroad company intervened, claiming that its rails, angle bars, etc., were, for reasons which were specially pleaded and which will be stated hereafter, not subject to any lien or privilege of the lessor, as security for the rent of the right of way. The district court gave judgment in favor of the plaintiff and against the Goldman Land Company for the amount sued for, but decreed that the steel rails, angle bars, etc. belonging to the Missouri Pacific Railroad Company were not subject to the lien or privilege claimed by the plaintiff as lessor of the right of way, and released the rails, angle bars, etc., from the seizure. The plaintiff, Burn Planting Company, alone, has appealed. There is no contest as to the amount of the judgment against the Goldman Landing Company, or as to its correctness in any respect except as to the decree that the Missouri Pacific Railroad Company’s rails, angle bars, etc., are not subject to a lien or privilege in favor of the plaintiff as lessor of the right of way.
 

 It is well settled that a lien, or “privilege,” as it is called in Louisiana, cannot be allowed unless it is expressly and unequivocally granted by statute; and the rule that liens or privileges are held stricti juris is particularly applicable when a creditor claims a lien or privilege on property belonging to one who is not the debtor, or liable for the debt.
 

 Appellant says that the question in this case is res nova, but contends that the lien claimed on the property of the railroad company to secure the refit due by the lessee of the right of way is granted by articles 2705, 2707, 3217 (par. 3), 3218, and 3260, of the Civil Code.
 

 Article 2705 gives to the lessor of any kind of real estate a right of pledge on the movable effects of the lessee, found on the leased premises. Article 2006 extends this right of pledge to the effects belonging to a sub-lessee, found on the leased premises, but limits the liability to the extent to which “the latter is indebted to the principal lessee, at the time when the proprietor chooses to exercise his right.” Article 2707 extends the lessor’s right of pledge to the movable effects belonging
 
 to
 
 third persons “when their goods are contained in the house or store, by their own consent, express or implied.” An analysis of the three articles therefore shows that the writers dealt separately and differently with reference to the effects belonging to the three classes of persons, viz: (1) lessees, (2) sublessees, and (3) third persons. As to the effects -belonging to the principal or original lessee, article 2705 puts no limitation upon their liability for the rent of the premises in which or on which they are found. As to the effects belonging to a sublessee, article 2706 limits their liability, for rent owed by the principal lessee, to the amount of rent owed by the sublessee to the principal lessee at the time of the seizure. As to the effects belonging to a third person, article 2707 imposes the lessor’s lien only on goods in a leased house or store. This court has consistently adhered to these limitations in applying articles 2706 and 2707 of the Code. In Rea v. Burt, 8 La. 509, for example, the court observed how unreasonable it would be to disregard the limitation in favor of third persons, under article 2707 (then 2677), while recognizing the limitation in favor of sublessees, under article
 

 2708 (then 2676). The court said:
 

 “The article 2675 [now 2705] gives a right of pledge on the movable effects of the lessee, in favor of the lessor, for the payment of his rent, etc.; which may be found on the property leased.
 

 “By the following article, this right includes the effects of sublessees, so far as they may be indebted to the principal lessor. The article 2677 [now 2707] is that on which the plaintiff mainly relies; it declares that the right of
 
 *725
 
 pledge not only affects the movables of the lessee and underlessees, but also those belonging to third persons, when their goods are contained in the house or store, by their own consent, express or implied. As it follows immediately the preceding article, which limits the liability of sublessees, it may well be considered as having reference to those limitations, as it would be extremely unreasonable to place third persons, who have less to do with the premises leased than underlessees, in duriori casu, than the latter.”
 

 In Lesseps v. Ritcher, 18 La. Ann. 653, and again in Merrick v. La Hache, 27 La. Ann. 88, it was held -that, under the rule strieti juris, article 2707 of the Code gave the lessor a lien on the goods or effects of a third person only so long as the goods were “contained in the house or store,” notwithstanding, under article 2709, the lessor’s lien on goods and effects belonging to the lessee continues for a period of fifteen days after their removal from the leased premises, if they continue to belong to the lessee.' It was said, in the two cases cited, that, by analogy, if the lessor’s lien on the lessee’s goods should survive their removal from the leased premises for fifteen days, so should the lessor’s lien on a third person’s goods in a leased house or store survive their removal for a period of fifteen days, provided they continued to belong to the one who owned them when they were in the leased house or store and subject to the lessor’s lien. But the court ruled that the articles of the Code on the - subject were arbitrary and strieti juris. In the case last cited, the court said:
 

 “The proper inquiry appears to be in this case, are the movables of a third person which have been in the house or store of a lessor, and while there subject to his privilege, to be considered when removed, as being in pari casu with those of a lessee if seized by the lessor within fifteen days of the removal, provided the property continues to belong to the third person and can be identified? The article 2709 of the Civil Code is express on the subject, that in such a case the movables of a lessee may be seized, but is silent as to whether those of a third person may be seized after removal. The effects of a third person, equally with those of the lessee are, by article 2.707, made subject to the lessor’s privilege, when they are by his consent contained in the house or store of the lessor. By analogy, it would seem, the privilege would continue to attach like those of the lessee, and on the same conditions for fifteen days after removal. But by the well-established rule that privileges are strieti juris, we are precluded from assuming that the effects of a third person are affected by the lessor’s privilege after then-removal from his house or store. The law declares a privilege in favor of the lessor on the property of third persons, only on the conditions expressed in article 2707 of the Code, and .to those conditions we think the privilege must be restricted.”
 

 It is true that the railroad equipment involved in this case was not removed from the leased right of way, but the more important fact is that the railroad equipment, belonging to a third party, was not of the character of “goods contained in a house or store.” It is too plain to admit of argument that articles 2705 and 2707 of the Code do not give the lessor a lien or privilege on movable effects belonging to a third person unless they are contained in a leased house or store.
 

 Article 3217 is merely an enumeration of the debts that are secured by a lien or privilege on certain or particular kinds of movable property; the paragraph No. 3 being:
 

 “3. The rents of immovables and the wages of laborers employed in working the same, on the crops of the year, and on the furniture, which is found in the house let, or on the farm, and on everything which serves to the working of the farm.”
 

 If we assume that that paragraph of article 3217 was intended to apply to movable effects belonging to third persons — and to abolish the restrictions contained in article 2707, which we do not believe — the strict interpretation of article 3217, even so, would not impose the lessor’s lien or privilege upon the Missouri Pacific Railroad Company’s equipment on the right of way leased by the
 
 *727
 
 plaintiff to the Goldman Landing Company, because the railroad equipment is not, in any sense, furniture in a house, or on a farm, or used in working a farm. Our opinion, however, is that article 3217, being merely an enumeration, in general terms, of the liens or privileges allowed on movable property, was not intended to abolish the special provisions of article 2707, governing especially and particularly the lessor’s lien and privilege on movable effects belonging to a third person, not personally liable for the rent of the premises on which the effects are found.
 

 Aftiele 321S of the Code merely declares that the lessor’s privilege is of higher rank than that of other privileged creditors because it gives the lessor the right to retain the property in pledge until the rent is paid. The article does not purport to determine what class of movable effects, or whose movable effects, the lessor shall have a lien or privilege on, but merely declares that his privilege on such movables as he has the privilege on shall make him a pledgee of such movables.
 

 The next .and last article relied upon by the plaintiff is article 3260 of the Code. It contains three palpable errors in the translation from the French text, and even when they are corrected the language is of very doubtful meanings, By the Act 87 of 1871, p. 199, article 3260 was amended and re-enacted so as to correct certain “typographical errors and omissions” in this and other articles, in the revision of the Code of 1825 by the Act 97 of 1870; and, as thus corrected, the article has appeared in every subsequent edition of the Revised Civil Code precisely as ■ it was originally translated from the French text, in article 3227 of the Code of 1825, viz.:
 

 “li among' the movables with which’ the house or farm,: or any other thing subject to the lessor’s privilege, is provided, there should.be some which were deposited by a third person in the hands of the lessor or farmer, the lessor shall have a preference over the depositary, on the things deposited, for the payment of his rent, if there are no other movables subject to his privilege, or if they are not sufficient; unless it be proved that the lessor' knew that the things deposited did not belong to his tenant, or farmer.”
 

 • According to the French text, the phrase “or any other thing subject to the lessor’s privilege” should be written after completing the expression “If, among-the movables with which the house or farm is provided.” The French text reads: “Si, -parmi les taeubles qui garnissent la maison ou la ferme ou autres objets affectés au privilege du loeateur,” etc.; which means, “If, among the movables which (adorn) equip the, house or the farm, or other objects subject to
 
 the
 
 privilege of the lessor,” etc. As the language is. transposed in the translation, the parenthetical phrase “or any other thing subject to the lessor’s privilege” is misleading. It might well be mistaken to mean any other thing subject to the lease itself, like “the house or farm.”
 

 The next error in the translation of article 3260 is that the word “locataire,” which means lessee, or tenant, is translated into • “lessor,” as if it read “locateur.” The third error is that the word “déposant,” which means depositor, is translated into its correlative, “depositary,” meaning the person receiving the deposit.
 

 The result of the three errors in the translation is that article 3260 of the Gode declares that, if, among the movables with which the house or farm, or any other thing subject to the lessor’s privilege — as if the house or farm belonging
 
 to the
 
 lessor could be subject to his privilege — is provided, there are some that were deposited by a third person in the hands of the lessor, he (the lessor) shall have a preference over the person holding the things on deposit.
 

 The French text of article 3260, which .was article 3227 of the Code of 1825, is this:
 

 
 *729
 
 “Si, parmi les meubles qui garnissent la maison ou la ferine ou autres objets affectés au privil&ge du loeateur, il s’en trouve qui aient été déposés par un tiers entre les mains du locataire ou fermier, le loeateur sera préféré au déposant sur les choses déposées, pour le payempnt de son loyer ou de sa ferme, s’il n’existe pas d’autres meubles affectés & son privil&ge, ou s’ils ne sont pas suffisans, &. moins qu’il né soit prouvé que le loeateur avait eonnaissance que les choses déposées n’appartenaient pas a son fermier ou locataire.”
 

 A literal translation .would be this: If, among the movables which equip the (leased) house or farm, or (among the) other objects subject to the privilege of the lessor, there are found some (things) which have been deposited by a third person into the hands of the lessee or farmer, the lessor shall be preferred to the depositor on the things deposited, for the payment of his rent (ou, or) of his farm, if there be not other movables subject to his privilege, or if they be not sufficient, if it be not proved that the lessor had knowledge that the things deposited did not belong to his farmer or lessee.
 

 As we have shown, if we take the language of article 3260 of the Revised Civil Code literally, as transposed in the translation, it has no meaning. ' If retransposed into the original French text of article 3227 of the Code of 1825, the article would yet be not appropriate to this case. The railroad equipment involved in this suit is not in the category of something deposited by a depositor into the care and keeping of a depositary, because the railroad equipment was leased by the Missouri Pacific Railroad Company to the Goldman Landing Company, just as the right of way was leased by the plaintiff, or his assignors, to the Goldman Landing Company. Article 2900 of the Code declares that a deposit is essentially gratuitous, and that, if the person with whom the deposit is made receive a compensation, it is not a deposit but a hiring of the thing; and article 2669 defines the contract of
 
 hire
 
 as being synonymous with
 
 lease.
 
 Therefore, when article 2929 says that a transaction is a contract of hire, or lease, if the party receiving the thing
 
 receives
 
 compensation, it means, obviously, if the receiver of the thing
 
 pays
 
 compensation, or if the owner of the thing receives the compensation. The error is in the French .text of the Code of 1825, but not in the corresponding article (1917) of the Code Napoléon, because that Code was not encumbered with definitions and illustrations. Article 1917 of the Code Napoléon says merely: “Le dépSt proprement dit est un contrat essentiellement gratuit.”
 

 Where the receiver of a deposit pays a consideration, and the transaction is therefore a- lease, the thing so deposited by a third person is not subjected to the lessor’s lien by article 3260 of the Code.
 

 In Vairin v. Hunt, 18 La. 49S, it was held that the storing of a quantity of corn in a warehouse, for a stipulated storage charge per sack of corn, constituted a contract of lease, and that the lessor of the warehouse had a lien on the corn only to the extent that the owner of the corn was indebted to the warehouseman for the storage charges. The storage of íhe corn was not a
 
 deposit
 
 of the goods, by a third person, under article 3260, but a lease or hire of space in the warehouse. The court said:
 

 “There is no difference between dwelling houses and stores in relation to the rights of the lessor, on the effects of the lessee, and underlessee; and persons who pay storage on their goods in a warehouse are liable to the landlord’s privilege as sublessees.
 

 “But the goods or effects of sublessees or persons storing property in a warehouse under lease, are subject to the proprietors’ right of pledge or privilege only for such sum as they may be owing at the time this right is enforced.”
 

 In King v. Harper, 33 La. Ann. 496, it was held that the housing of horses in another’s stable, at a stipulated charge per day for each horse, for the housing and feeding of the horses, constituted a contract of lease, and that the original lessor of the stable had
 
 *731
 
 a lien on the horses only to the extent that the owner of the horses was indebted to the stableman for the housing and feeding of the horses. In other words, the placing of the horses in the leased stable was not a deposit of the horses, under article 3260 of the Code, because the lessee of the stable received a compensation for keeping the horses, which, under article 2929, made the transaction a contract of hire, or lease.
 

 On the other hand, in University Publishing Co. v. Piffet, 34 La. Ann. 602, it was held that the goods of a third person stored in a warehouse or store, under an agreement with the lessee of the house that no rent or other consideration was to be paid for the storing or housing of the goods, were subject to the landlord’s lien. In that case, however, the goods of the third person were seized and sold in satisfaction of the landlord’s lien before he knew that the goods belonged, not to his lessee but to a third person; and the suit was brought by the owner of the goods to recover their value.
 

 Article 3260 does not allow the lessor a privilege on things deposited in the hands of the lessee by a third person, if it be proven that the lessor knew that the things deposited did not belong to the lessee; but the article does not say when the acquiring of such knowledge by the lessor shall have the effect of depriving him, of the lessor’s privilege on the things deposited. A logical inference would be that the article refers only to things deposited on the leased premises previous to the making or a renewal of the lease, because it is only at the time of the making, or at the time of a renewal, of the lease, that the lessor’s knowledge, as to whether any particular movable property in or on the leased premises belongs to the lessee or to a third person, could influence his conduct or affect his right to claim a lien on such movable property. If that is not what the article means, it must be that the lessor’s acquiring the knowledge at any time before the goods are sold to satisfy the lessor’s lien, that they do not belong to the lessee, forbids a sale of the depositor’s goods. The only other interpretation would be that a third person desiring to place movable property in or on leased premises may protect his property against the lessor’s lien and privilege by simply notifying the lessor that the movable property deposited or to be deposited on the leased premises does not belong to the lessee.
 

 It has never been decided by this court, as far as the available digests, citations, and annotations disclose, that movable property of a third person, on leased premises but not contained in a house or store, is subject to the lien or privilege in favor of the lessor of the premises. In the decisions cited and re-lied upon by the appellant, the court dealt only with property belonging to the lessee of the premises, viz.: Bazin v. Segura, 5 La. Ann. 718; Matthews & Finley v. Their Creditors, 10 La. Ann. 718; and Succession of Stone, 31 La. Ann. 311. In Bazin v. Segura, supra, the court took occasion to say:
 

 “The reason for the privilege is found in the fact that the movables occupy the house, and are sheltered and protected by it. There is justice, therefore, in applying them to the payment of the rent. It will be observed, that in this opinion, we are considering the question of privilege as to property of the lessee only.”
 

 In the case of Goodrich v. Bodley, 35 La. Ann. 525, and in Henry Rose Mercantile & Manufacturing Co. v. Stearns, 159 La. 957, 106 So. 455, the goods of the third person, which were held subject to the lessor’s privilege, were shipped to the lessee and placed ■in his store to be sold by him, and were therefore plainly governed by article 2707 of the Civil Code. In the latter case it was contended by the owner of the goods that they were
 
 deposited
 
 with the lessee, that the lessor knew that the goods did not belong to the lessee, and that the case was there
 
 *733
 
 fore governed by article 3260. But the court said that that article had reference to the
 
 deposit
 
 defined in articles 2926, 2929, et seq., viz.;
 

 “Intervener also relies on article 3260 of the Civil Code. * * * The deposit, referred to by the article, is that defined by law as being an act by which a person receives the property of another, binding himself to preserve 'it and return it in kind. Civil Code, art. 2926.”
 

 In Bailey v. Williams, 158 La. 432, 104 So. 197, also cited hut not particularly relied upon by the learned counsel for appellant, the decision was based upon the finding by the court that the lessor of the land had agreed that the cattle placed there by third persons would not be held subject to the lessor’s lien or privilege. There was no ruling or expression of opinion as to whether the cattle would have been subject to the lessor’s privilege if there had been no agreement to the contrary with the lessor of the land.
 

 Although the question has not been free from difficulty, we conclude that the judgment appealed from is correct.
 

 The judgment is affirmed.