### PETKAS v. POLLARD (FRIGIDAIRE SALES CORPORATION, Intervener).*

### No. 4342.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1933.

*Rehearing denied March 10, 1933.

Polk & Robinson, of Alexandria, for appellant.

Gus A. Voltz, of Alexandria, for appellee.

MILLS, J.

Plaintiff leased to A. J. Pollard, local accredited dealer for the Frigidaire Sales Corporation, a store building in the city of Alexandria in which defendant conducted the business of selling the products of intervener. Pollard becoming in arrears with the rent, plaintiff brought this suit for $2,555, claiming a lessor's lien and privilege on all property found on the leased premises. Under the writ of provisional seizure issuing in the case, together with other property on the premises, one milk cooler with Dixie coil, one aereator, brine pump, and one Frigidaire compressor, were seized. These various parts assembled together constitute a milk-cooling machine.

Default judgment was taken against Pollard, who had departed from the scene of his misfortunes.

The Frigidaire Sales Corporation intervened, alleging that the above equipment owned by it was shipped to Pollard solely for exhibition purposes at a fair to be held in Alexandria October 12th, and was to be returned immediately after its conclusion. They further allege that it was taken by Pollard to his place of business in violation of express instructions, and was therefore only transiently and accidentally on the leased premises and not subject to the lessor's lien of plaintiff.

In answer to the petition of intervention, plaintiff asserts that this equipment seized was shipped to Pollard in the usual course of business, was his property, and liable for the rent.

On the trial of the intervention, the Frigidaire Sales Corporation offers four witnesses, D. D. F. Yard, their district sales manager for the New Orleans district, M. W. Baird, their field representative, Bill Keating and George Randolph, employees of Pollard. The testimony of these witnesses, standing alone, makes out a very strong case for intervener. They say that the cooling machine was specially constructed for exhibition purposes, that it was shipped to Pollard freight prepaid on a loan agreement and not C. O. D. sight draft with bill of lading attached, as is customary when goods are shipped for sale. They claim that Pollard was specially instructed to exhibit it only at the fair and not on his premises; that, after being so exhibited, the machine was to be immediately returned to them; that at the time of its seizure the New Orleans branch had demanded its return; and that Pollard had wired that he was returning it.

The two employees testify that they were present at Lafayette with Pollard when arrangements were being made for the shipment of the apparatus to Alexandria; that they heard all of the conversation, and that the agreement was as testified by Yard and Baird; that Pollard did not make the exhibit as planned because the fair association demanded $125 for the use of a booth; that the cooler was never uncrated; and that when its sale was suggested by them Pollard refused, stating that he did not even know its list price. Keating testified that before leaving Alexandria Pollard declared that he was purposely leaving the machine to be seized. Keating does let his foot slip by, when asked if he was not instructed by Pollard to try to find a purchaser for the machine, answering: "Yes, sir, that was the purpose of shipping it up here." Contradicting his testimony that Pollard did not know the price, the loan consignment invoice, filed in evidence, gives the price of each component part, making a total price of $543. This invoice was received by Pollard and informed him of the price.

Randolph contradicts Yard on the point that the machine was not for sale when he testifies that, when Yard called up to demand its return, he gave as a reason that he had the machine sold.

Pollard being absent, it was admitted that, if present, he would testify that the milk-cooling equipment was sold and invoiced to him for resale, and was not sent for purpose of demonstration.

Unluckily for intervener, its manager in charge of the district in which Alexandria is situated wrote a letter directed to A. J. Pollard, dated October 8, 1931, just prior to the Alexandria Fair to be held October 12th, which is utterly contradictory of its contentions and completely destructive of its case. We quote its pertinent part:

"We are shipping you today via freight prepaid the following milk cooling equipment:

| | | |
|---|---|---|
| Tubing & Valve | $ 54.20 | (Dealers Cost) |
| Aereator | 57.00 | " " |
| Pump | 36.00 | " " |
| Cooler | 150.00 | " " |
| Plus Installation | | |
| Plus Freight ($9.50) | | |
| Model A-4100 | $223.64 | FOB New Orleans |

"Your cost price on this equipment is as shown. To this naturally will have to be added installation.

"We ask that you kindly see that all of this is handled carefully so that in the event it is necessary to return it, we will be able to get credit on the aereator and pump we purchased from the manufacturers; however, we are in great hopes that you will be able to sell this complete job to a dairyman, as stated when you were with us in New Orleans and we know that if anyone can sell it, Jack Pollard can, as you have established a reputation to live up to and we have even gone so far as

to tell Atlanta that you are the man who is going to put it across. If we can do anything to assist you, call upon us.

"While it may be well to set this equipment up at the Fair, we cannot help but feel that it will serve the purpose, not only as well, but better, in your own establishment, as the people who go to the Fair wander around and tinker with everything in a disinterested sort of manner, whereas the people you can get in on your showroom floor are there for a certain purpose and you can close the deal.

"The Donaldsonville Fair, from our viewpoint, was not anything to rave about, and I presume that Mr. Baird has already told you how we waded around in mud over our ankles."

The lower court rejected the demands of intervener, whereupon it appealed to this court.

### Opinion.

We attach more weight to the letter written at a time unsuspicious, in the usual course of business, concerning the identical transaction before the court, than to the oral testimony of all the witnesses given at a time when intervener was endeavoring to secure the release of the equipment from the effects of the provisional seizure.

Intervener's case rests upon the provisions of articles 2707 and 2708 of the Revised Civil Code, reading as follows:

R. C. C. art. 2707. "This right of pledge [the landlord's] affects, not only the movables of the lessee and underlessee, but also those belonging to third persons, when their goods are contained in the house or store, by their own consent, express or implied."

R. C. C. art. 2708. "Movables are not subject to this right, when they are only transiently or accidentally in the house, store, or shop such as the baggage of a traveller in an inn, merchandise sent to a workman to be made up or repaired, and effects lodged in the store of an auctioneer to be sold."

The facts in this case as disclosed by the letter bring it squarely under the decision of our Supreme Court in the leading case of Henry Rose Mercantile & Mfg. Co. v. Stearns, 159 La. 957, 106 So. 455, 458, as followed and approved in Burn Planting Co. v. Goldman Landing Co., 163 La. 720, 112 So. 662. The former case, after reviewing the articles of the Code and the jurisprudence, holds:

"In the case at bar the evidence shows that the goods were placed in defendant's place of business with the consent of intervener, to be there sold and to remain there until sold, and hence, as said in the Goodrich Case, from which we have quoted, the provisions of article 2708 of the Civil Code cannot be invoked by intervener, for the goods were not transiently in the premises within the intendment of that article."

To the same effect, see Sanchez v. Herzfeld, 4 La. App. 576; Tex-La Realty Co. v. Earnest, 11 La. App. 617, 124 So. 558; also Loque v. Baptist-Golding Motor Co., 157 La. 124, 102 So. 91, for a definition of the word "transient."

It may be contended that the present case does not meet all of the requirements of the Henry Rose Mercantile & Mfg. Co. Case, in that before the seizure the goods were ordered returned and Pollard had wired that he was returning them. We think the case depends upon the intention with which the cooling machine was placed in the premises. That the lien attached at that time and could not be defeated by any change of arrangements that did not result in the removal of the goods from the premises. The letter quoted above does not reveal any intention that the goods should not remain until sold.

For the reasons assigned above, we find the judgment of the lower court correct, and it is accordingly affirmed.