535 So.2d 1207 (1988)
SHANK-JEWELLA, a Louisiana Partnership, Plaintiff-Appellee,
v.
The DIAMOND GALLERY, Defendant-Appellant.
No. 20,177-CA.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1988.
*1209 Humphries & Humphries by G. Earl Humphries, III, Alexandria, for Diamond Gallery & Richard Humphries.
Comegys, Lawrence, Jones, Odom & Spruiell, Shreveport by Frank H. Spruiell, Jr., for Shank-Jewella and William E. Shank, III.
Skeels, Baker, & Coleman by Donald L. Baker, Shreveport, for Carl J. King.
Before HALL, MARVIN and LINDSAY, JJ.
MARVIN, Judge.
In this action under a written lease to a partnership retail jewelry store, the lessee, through one of the two defendant partners, appeals a judgment enforcing the lease and awarding $14,736 in past due and future rent, recognizing the lessor's lien under a writ of sequestration, and awarding $2,500 attorney fees to the lessor. The lessor answered the appeal seeking an increase in the award of attorney fees.
Lessee contends the lease is unenforceable
because the lessor induced the lessee to sign the lease by making representations, which it did not fulfill, that other tenants would fully occupy the shopping center within a few months after the lease was signed;
because the lessee partnership ended when one of the partners sold to the other and the lessor agreed to enter into a "new lease" with the remaining partner;
because the lessor had routinely accepted partial and late rental payments from the lessee and did not formally default or notify lessee before instituting the action to enforce the lease.
Lessee also contends, in any event, that the lessor should have mitigated its damages by leasing the premises to another tenant; that sequestration was "wrongful" because the sequestered property no longer belonged to the partnership, but was solely owned by the one partner; and that the $2,500 award for attorney fees is excessive and should be denied or reduced.
No complaint is made that the judgment upholds and recognizes the indemnity demand of the selling partner against the partner who bought his partnership interest.
We amend to increase the attorney fee and affirm.

FACTS
The Diamond Gallery, through its two partners, Humphries and King, leased a suite in the South Jewella Plaza shopping center on June 19, 1985, for a two-year term beginning August 1, 1985. Humphries timely paid the monthly rent and other charges through January 1986. On *1210 August 27, 1985, Humphries purchased King's interest in the partnership and continued the business as a sole proprietor. In that sale, Humphries effectively assumed all of the partnership obligations and agreed to indemnify King or hold him harmless for any loss or damage arising out of those obligations.
From February 1 through August 1986 Humphries was continually late in his payments of the lease obligations. He paid only $2,600 in partial payments and was in arrears about $6,600. During the summer of 1986, Humphries wrote two undated letters to the lessor seeking the further indulgence of the lessor:
Bill,
Business is still hanging in there and I appreciate your help.
If possible place those missed 2 months on the end of our contract but I'll be able to pay them off before that time comes.
Thanks Bill, you'll never know how much I appreciate it.
Sincerely, Richard Humphries Bill,
This is the limit of money that I have. It seems that the customers with layaways are in financial binds and can't pay their layaways off on time. I still hope to catch up with you as soon as possible. This is a priority of mine. I'm trying as hard as I can. I hope you take a few of those late months and add them to the end of my lease. Thanks Bill for the help. I will stay in touch.
Sincerely, Richard
During the last few days of August 1986 Humphries began moving the contents of his jewelry store to premises in another shopping center, Kilpatrick Plaza, a few blocks away on Jewella Road. There he placed a sign "Coming SoonThe Diamond Gallery." One of the lessor's employees saw the sign. The lessor instituted its action on August 29. Humphries completed his move on August 30. Humphries learned of the pending action and writ of sequestration before it was served and posted a $15,000 bond to avoid seizure of his merchandise and furnishings. The action was tried on December 3, 1987. Judgment was signed in February 1988.
The trial court, weighing and assessing conflicting testimony, concluded that the lessor did not promise or represent to lessee at any time that its shopping center would be fully occupied by other tenants and that lessor did not promise Humphries that a new lease would be written for him as a sole proprietorship after he purchased King's partnership interest.

THE LESSOR'S ALLEGED REPRESENTATIONS
Humphries and King testified they had already leased space elsewhere but chose the South Jewella Plaza location instead of the other one because lessor's representative, Lee Hall, told them South Jewella Plaza "should be full by Christmas of 1985." Humphries testified that Diana Poole, another of lessor's employees, told him in November 1985 that the shopping center would not be filled by Christmas but said "she'd try to have it full by May of 1986." When Humphries moved out on August 30, 1986, there were six other tenants in the 38,000 square foot shopping center.
Humphries and King explained the benefits they hoped to obtain from heavy pedestrian traffic at the shopping center. They admitted that the anticipated occupancy rates were not mentioned in the written lease and that no one represented to them that the lease would be void if the desired occupancy was not achieved.
Paragraph XIX of the lease states:
This lease contains the entire agreement between the parties hereto and no agreement shall be effective to change, modify or terminate this lease either in whole or in part, unless such change is in writing and duly signed by all parties hereto. Landlord and Tenant hereby acknowledge that they are not relying upon any representation or promise of the other, or of any other agent or cooperating *1211 agent, except as may be expressly set forth in this lease.
Humphries testified he read the entire lease before he signed it and admitted that it "contained the full extent of the agreement..."
William Shank testified that he has never represented to this lessee or any other tenant that the shopping center would be filled by a certain date and that none of his employees ever did so in his presence.
Humphries argues that the lessor's failure to call its employees Lee Hall and Diana Poole as witnesses gives rise to a presumption that their testimony would have been unfavorable for lessor. The presumption is invoked only against the litigant who bears the burden of proof with respect to the matter about which the witness would testify. The presumption is inapplicable if the witness is equally available to summons by all parties. Price v. Lanoue, 190 So.2d 478 (La.App. 1st Cir. 1966); Keystone Paint & Decorating Co. v. West, 37 So.2d 556 (La.App. 2d Cir.1948).
The lessee raised as a defense and had the burden of proving the alleged representations were made. The lessee did not subpoena Hall or Poole or assert that they were unavailable to subpoena. The presumption does not apply in these circumstances.
Humphries also testified he told Gray Miller, another representative of lessor, about the partnership termination and asked him to take King's name off of the lease in August 1985. Humphries said Miller told him he could not take King's name off of the old lease but agreed to write a new lease with Richard Humphries, d/b/a The Diamond Gallery, as tenant.
William Shank recalled Humphries telling him that he and King were discussing terminating the partnership. Shank said he asked Humphries to let him know if and when that was accomplished but Humphries never got back in touch with him. Shank said he did not learn that the partnership had in fact terminated until after this suit was filed. He said he would have required additional security for a lease with Humphries individually because he regarded King as the more financially secure partner.
The lessee's contention that Gray Miller's failure to testify should be construed against the lessor is answered by the authorities cited above regarding the other alleged representations. The trial court found that lessor did not promise to enter into a new lease with Humphries individually. Paragraph XIX of the lease, quoted above, stipulates that agreements to change or terminate the lease must be in writing and signed by all parties to the lease. Lessee produced no such writing. The two-year lease was not converted to one for month-to-month rental.
The trial court heard conflicting testimony about the alleged representations. It found that lessor did not make the alleged promises about occupancy or about making a new lease to Humphries. We do not disturb these findings, which are not clearly wrong and are supported by the record. Davis v. Winningham Datsun-Volvo, Inc., 493 So.2d 719 (La.App. 2d Cir. 1986).

EFFECT OF ONE PARTNER'S SALE TO THE OTHER
The Diamond Gallery partnership was terminated when King sold his partnership interest to Humphries on August 27, 1985. C.C. Art. 2826. C.C. Art. 2828 allowed Humphries, as remaining partner, to continue the business as a sole proprietor rather than liquidating it. Even where a partnership business is not continued as a sole proprietorship, it fictitiously continues for purposes of liquidation after the partnership terminates as a legal entity. C.C. Art. 2828.
A dissolved partnership maintains a fictional existence with respect to its past transactions and existing assets, until all of its affairs are wound up and completed. This fictional existence permits the partnership to liquidate its affairs, perform existing contracts, collect its debts, pay its obligations and distribute its assets according to the partnership agreement.
*1212 Edco Properties v. Landry, 371 So.2d 1367, 1373-74 (La.App. 3d Cir.1979), writ denied.
Partnership termination does not, of itself, extinguish a lease that the partnership entered into before termination. Duvic v. Home Finance Service, 23 So.2d 790 (La.App.Orl.1945). The partnership was terminated on August 27, 1985, after it entered into the two-year lease on June 19, 1985. The lease was not affected or extinguished by the sale that terminated the partnership.

UNPAID RENT
Humphries admitted he was not current on rental payments from February-August 1986 because "business was bad." He made no payments during some of those months and only partial payments during others, leaving about $6,600 owing when he moved out. He made a $5,100 payment to lessor when he sold a diamond after the suit was filed.
Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App. 3d Cir.1975), recognizes that the rental due date in a lease may be altered by a lessor's customary acceptance of late payments, but only if the lessor's acquiescence is voluntary and not in circumstances where the acceptance is deemed "unwilling and forced." 315 So.2d at 793.
Shank testified Humphries' letter proposal (quoted above) to add the late rental payments to the end of the lease term "wasn't necessarily agreeable but it was an offer of a way to get caught up." He said he would have considered extending the term of the lease or accepting the offer if the rent was not current at the end of the term. Humphries moved out of the shopping center shortly after he wrote the letters. This was 11 months before the lease term was to expire.
Under these circumstances, as in Himbola, supra, the lessor's indulgence or acquiescence was involuntary, forced by Humphries' inability to pay, and cannot be deemed to have modified the lease. See also Investor Inns, Inc. v. Wallace, 408 So.2d 978 (La.App. 2d Cir.1981).
The above holding is supported by this provision of the lease:
One or more waivers of any covenant, term or condition of this lease by either party shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition. The covenant or approval by either party to or of any act by the other party requiring such consent or approval shall not be deemed to waive or render unnecessary consent to or approv[al] of any subsequent similar act.

DEFAULT
The lease allows the lessor to accelerate future rental payments if any installment of rent is not paid when due. It requires the lessor to give the lessee notice of default and 15 days to cure the default if the default is "for any reason other than the payment of rent." The lease does not require formal default as a prerequisite to suing for unpaid rent.
Humphries does not dispute that he became delinquent in February 1986 and remained so thereafter. The lessor had the right to file suit to collect the past due rent and accelerate the future installments without a prior demand. The lessee did not prove that the lease was modified in this respect. The trial court properly awarded lessor the past and future rental payments due under the lease.

MITIGATION OF DAMAGES
When a lessee vacates the leased premises prematurely, the lessor must take reasonable steps to lease the space to another tenant to minimize its damages. Easterling v. Halter Marine, Inc., 470 So. 2d 221 (La.App. 4th Cir.1985), writ denied.
The lessor tried to lease the 1,240 square foot suite vacated by the lessee to at least two prospective tenants, but they did not rent a suite at the shopping center. The lessor acquired three new tenants after the lessee moved out, but each desired a larger suite than the one vacated by the lessee.
*1213 The lessee argues, without factual basis, that to avoid its duty to mitigate damages, the lessor actively sought to rent all suites in the shopping center except the one vacated by lessee. The record shows, however, that the lessor attempted to rent the lessee's suite but was unable to do so because it did not meet the needs or desires of the prospective tenants. The issue is whether the lessor's efforts were reasonable. The lessor's efforts, although unsuccessful, were reasonable under the circumstances and fulfilled the lessor's duty to mitigate damages. See and compare Easterling v. Halter Marine, Inc., supra.

WRIT OF SEQUESTRATION
When the lessor filed suit Humphries was moving his furnishings and inventory to the new location. To enforce its lessor's privilege, the lessor obtained a writ of sequestration to seize "All of the movables in the [new] premises ... and all of the merchandise owned by defendant, and being removed by him from the [old] premises... which are in the [new] premises ..." Humphries learned of the writ before it was served. He admitted he closed the new store for several days to avoid service of the writ.
On September 5, 1986, Humphries posted a $15,000 bond to prevent the seizure. He also filed a reconventional demand for damages, alleging the writ was wrongfully issued because the property sought to be seized belonged to him individually and was not subject to seizure once it was removed from the leased premises. The trial court dismissed the reconventional demand, maintained the writ, and recognized the lessor's privilege on the $15,000 bond. We find no error.
As security for the payment of rent and performance of other lease obligations, the lessor has a right of pledge, or privilege, on movable property of the lessee found on the leased premises. C.C. Art. 2705. He may seize property subject to the privilege before the lessee removes it from the leased premises, or within 15 days after the lessee has removed the property without the lessor's consent, if it continues to be the lessee's property and can be identified. Art. 2709.
The lessor may also seize movables belonging to a third person that are found on the leased premises which were placed there with the owner's express or implied consent. Art. 2707. The lessor's privilege on property belonging to a third person is lost if the property is removed from the leased premises. Burn Planting Co. v. Goldman Landing Co., 163 La. 720, 112 So. 662 (1927); Suite 5-A/B Partnership v. DJF Co., 417 So.2d 865 (La.App. 4th Cir.1982).
The term "third person" in Art. 2707 means one who is not personally liable to the lessor for the payment of rent. Burn Planting Co. v. Goldman Landing Co., supra. The propriety of the writ turns on whether Humphries is classified as "lessee" or as a true "third person" who is not personally liable for the rent.
When the lease was signed, the lessee partnership was primarily liable for the payment of rent. The two partners were liable for their virile share of the debt. C.C. Art. 2817. When Humphries acquired King's partnership interest, the partnership terminated as a separate entity but retained legally a fictitious existence as concerned its past transactions and obligations. C.C. Art. 2828; Edco Properties v. Landry, supra. When Humphries acquired King's interest in the partnership assets, he assumed the partnership obligations and agreed to hold King harmless against any further obligations under the lease.
Whether the property subject to seizure belonged to the legally fictitious partnership or to Humphries individually, Humphries was personally liable for debts of the former partnership, including the rental payments due under the lease. In the context of C.C. Arts. 2705-2709, he may be deemed to be either the "lessee" or one who is responsible to the lessor and not a true "third person." As such, he could not defeat the lessor's privilege by removing property from the leased premises without the lessor's consent. C.C. Art. 2709; Burn Planting Co., supra.
*1214 The fact that Humphries posted a bond to avoid the seizure does not, as the lessor argues, preclude him from asserting that the writ was wrongfully issued. C.C.P. Arts. 3507, 3514. Humphries does not prevail on the merits of his wrongful seizure claim, however, because the property at the new store was legally subject to the lessor's privilege.

ATTORNEY FEES
The lessor was billed for the professional services rendered by its attorneys, for about $6,700 for 70 hours of work. The bill shows that at least four lawyers in the same law firm worked on the case, perhaps with some duplication of time and effort. The trial took less than a full day and resulted in a judgment for over $14,000. Both litigants seek to modify the trial court's $2,500 attorney fee award.
The reasonableness of an attorney fee award is within the discretion of the trial court. Sims v. Hays, 521 So.2d 730 (La.App. 2d Cir.1988). A court is not bound to award the amount a client is billed by his attorney, but instead should determine meaningful reimbursement to the successful litigant for legal expenses incurred because of the other party's actions. Verbick v. R.G.C. Investments, Inc., 477 So.2d 858 (La.App. 5th Cir.1985).
The lessee raised numerous factual and legal issues in defense of the lessor's demands. Both litigants propounded and answered interrogatories. The lessor has prevailed on all issues, has answered the appeal seeking additional attorney fees, and has briefed and argued all issues.
Considering the time and skill involved, the complexity of the issues, and the lessor's ultimate success on the merits, as well as the fact that a fair amount of the time billed was for telephone conversations and for conferences among the various lawyers who handled the case jointly or in succession for the lessor, we cannot say the trial court's award for services in the trial court is abusively high or low. Considering the briefs and argument in this court, we amend the judgment to award an additional $700 for service of lessor's attorneys on appeal.

DECREE
The judgment, as amended, and at appellant's cost, is AFFIRMED.